I wonder if the attorneys who are going to argue this case would step up and tell us who you are. I'm Assistant State's Attorney Ashley Cusa on behalf of the people. Your last name again? Ashley Cusa, C-G-C-A. Is this your first argument? It is. Ms. Cusa, good morning. Welcome to the court. Sir? Good morning, your honors. Brett Zee from the Appellate Defender's Office on behalf of William Mims. Counsel, do you each have 15 minutes to address the court? Counsel, you may save up from your 15 any portion you wish for a rebuttal. Have you been here before? I have, your honor. All right. Okay. I think you can safely assume that we're familiar with your briefs and the issues in the case. You need not spend an inordinate amount of time on the facts. Thank you, Judge. I would like to reserve a couple minutes for rebuttal, if I may. You may. May it please the court. Your honors, defense counsel in this case put on a consent defense, but then proceeded to sabotage that defense in two main ways. First and primarily, he told the judge that he did not want the jury to be instructed on the defense of consent and the definition of consent. And he also failed to ensure that the jury got the necessary bracketed language in IPI 11.58 that lists the elements of the offense of aggravated criminal sexual assault. And that critical language is that in addition to the state having the burden to prove beyond a reasonable doubt the element of force, that when the defendant does put on some evidence of consent, that then the state also has the burden to prove a lack of consent beyond a reasonable doubt. And if you look, and also the second instance of him essentially sabotaging his defense was that he actually actively encouraged the state to put on prejudicial hearsay testimony from Officer Hayes that exactly mirrored the testimony of the complainant in the case. How did he encourage that? Well, he said that he, well first he didn't object when Officer Hayes essentially verbatim testified to what the complainant told her shortly after this incident occurred. Isn't some of that traditionally allowed though? First person she complains to? I thought that that still was something you could get into somewhat. Well, you can get into maybe course of conduct that the police got into, but you can't get into what the exact testimony of the complaining witness testified to at trial. I don't mean extensive testimony, but I thought there was something called an immediate outcry. The first person it's sort of like an excited utterance when someone has been sexually assaulted and they speak to someone and then they tell the police. This wasn't an excited utterance though, Your Honor. Was it like an immediate outcry? Did she meet the woman at the hospital? No, this was afterwards when the police came sometime after the offense. This wasn't moments after or even minutes after the offense that she talked to Officer Hayes. But again, how did he encourage it by not objecting? He didn't object and allowed Officer Hayes to go through the entire statement that the complainant made to her sometime after the event. But it was all stricken, wasn't it? It was stricken, but it took the court to say, hey, wait a minute. It took a very promoted, announced that it was hearsay, said it wasn't an excited utterance and said, you know, I'm going to instruct the jury to disregard that. But at that point, the jury had already heard this evidence that completely undermined Mr. Mim's version of events here and it bolstered the testimony of the complaining witness here. And the defense counsel's rationale for why he wanted this testimony to come in, and I'll be clear to these jurors that no matter what the officers say in this trial, it's only based on what this young woman said to them. What's wrong with that is a theory. It's nonsense. This allowed a prior consistent statement of the complaining witness to come in and not only was it just a prior consistent statement, it came from the mouth of a police officer. The jury's going to believe what it hears more than once. Aren't they going to follow the court's instructions though? Isn't that what the cases teach us that generally speaking when a court strikes testimony that we conclude that the jury followed the court's instructions? I think you can say generally speaking, but as you said, they had already heard this testimony. And if the jury had any doubts about the consent issue in this case, if they were leaning either way, this definitely helped to push them over the top and say, you know, the complainant testified to this. Here's this police officer coming in and saying the exact same thing. And yes, the judge is telling me to disregard it, but then in closing argument, the defense counsel says it again. It says he repeats this defense theory that he has that no matter what the police officers say here, it's based on what the complainant said. But if he just would have objected to that testimony at the get-go without letting any of that damaging inadmissible hearsay come in, then he wouldn't have had to explain to the jury about this testimony from the police officer in the first place. That just makes no sense as a legal theory. How do you get past the prejudice prong? You've got some other compelling evidence here. Another young woman testified about the same sort of scenario. So that was in front of the jury in addition to the victim in this case. Plus, you have the victim memorizing a license plate. Didn't she do that? She did give the license plate. Didn't she describe a white car, which in fact he owned? And then the other, you know, you have, well, the DNA, but you have this other young woman who also testifies at the trial. So how do you show that the outcome would have been any different without this testimony? Well, regarding the testimony from N.B., the other alleged victim, I mean, the evidence there wasn't overwhelming by any means. That was an identification issue. There was no DNA evidence that was admitted. No, because they can't try the other case. But there's no other corroboration. And there was actually some impeachment regarding what vehicle the perpetrator was driving. But it was a Jeep Cherokee versus a Nissan? Or a Montero. I mean, I think there were three different vehicles that were listed. Yeah, but they were, it was white. It was a white SUV type of vehicle. And both of the victims. That's true. But getting back to the prejudice, I mean, just, and this issue, I mean, this inimitable hearsay issue is just one prong of this ineffective assistance argument. Well, your major one is the lack of the instruction. Yes. Now, the defendant says that this instruction, defining consent, doesn't really help them. Because what does it say? Well, the defense counsel did not want the jury specifically to not get the definition of consent. And the language that he thought was problematic was the, there's the second sentence in that instruction that says, a lack of verbal or physical resistance or submission by the victim does not constitute consent. And he argued that that was not beneficial to the defense to have. But, I mean, there's a case that raises us, that raised, where the exact issue came up in People versus Frampton in 1993. In that case, the defendant argued What's the name of that one? People versus Frampton. Would you like to cite, Your Honor? Well, no, I mean, I'm assuming it's in your brief. No, that case is not in my brief, Your Honor. Oh, all right. Well, is it in your reply brief? No, it's not. Does the State know about it? I'm not sure if the State knows about it. Or are you springing it on them this morning? Well, you're springing it on me because I don't see it in your briefs. I'm not intending to spring it on your, I apologize, Your Honor, but you really shouldn't be arguing a case that hasn't been brought to the attention of the coroner, Your Honor. What does it say, anyway, now that you're springing it on us? It's not for the purpose of the case, Your Honor. I mean, it says essentially that when, in that case, the defendant argued that the jury should not have been instructed on that instruction says, that's a fair and accurate representation of what the jury instruction should be on consent. That's all that case stands for. Now, do you have a case that says that even though the attorney for the defendant and the defendant himself asked the court not to give the instruction, it's been given? I'm sorry, can you repeat the question, Your Honor? Do you have a case that says, even though the defendant says he doesn't want the instruction and his attorney says he doesn't want the instruction, the court gave it anyway? No. You don't have a case?  Not off the top of my head. That would be a good case for you. That would be a good case, but the crux of this argument is that the IPI for 11.58 says it is necessary. It's mandatory language that's when force is an element of the offense, which it is in this case, and the defense puts on or there is evidence presented of consent, which there has been, because Mr. Manning testified to that. Force was explained to the jury. Lack of consent was not. They got one part of the equation. They didn't get the second necessary part of the equation. They didn't get the definition of consent or the fact that there was this affirmative defense. Because the defendant said it, they didn't want it. They got zero of the three things that they were supposed to get, which the IPI directs the jury to get. So the trial court did have it. There's a case from the first district I don't think that either of you cited called People v. Roberts. That's correct, Your Honor. I'm aware of this case. Did you cite it? No, I did not. All right. You cited Coleman. I cited People v. Coleman. Let's go back. It starts with People v. Fryman in 54, where this second component of the instruction comes out. I'm the one telling you about a case now, so I'll go back now. You cited Coleman, and as I say, neither of you cited Roberts. Coleman says it's, you know, a great, great error not to give the consent. But that case didn't involve a defense attorney saying, you know, we don't want that. That language hurts us. And then we have this Roberts that I thought everybody is supposed to cite if it's against you. So this one says that it's not plain error to not give the consent where the state has proven beyond a reasonable doubt force, because consent is the very antithesis of force. And then there's these other, there's a Supreme Court case or two that says when you prove force, you've already sort of shown lack of consent. That is correct, Your Honor. I mean, the People v. Haywood does talk about the relationship between force on the one hand and lack of consent on the other. Obviously, those are intimately related. But what Haywood does say that is important and where all this stems from is that when the evidence, when there is evidence of force, of lack of consent that is put on, then the burden shifts to the state to not only prove force, but to also prove a lack of consent beyond a reasonable doubt. It clearly says that. Coleman takes that and cites that exact language and they find a grave error. But the case, but Roberts is a First District case that says they don't agree with Coleman that says, and it's subsequent to Coleman, and it says that if the state establishes beyond a reasonable doubt force, that that satisfies any problem or error that could have arisen by not giving. Well, it doesn't actually, it doesn't exactly say that, Your Honor. What Roberts does is it disagrees with Coleman's holding that it's a per se error or a grave error and they Well, they say it's not a plain error. Right. It's not a plain error, but then they, and then what Roberts echoes, what Roberts and Rollins essentially do is that they acknowledge that this is an error. I mean, it's, the jury should be instructed on these things. But then they also look at other factors. They look at the closeness of the evidence. They look at all the jury instructions that the jury got to make sure that the instructions as a whole accurately and fully apprised the jury of what the legal issue was. And then they also look at what the opening and closing statements and the arguments were. So what's notable about this case is that the jury got none of the things. As I said, they didn't get the bracketed language that shifts the burden to the state to prove a lack of consent. They didn't get the fact that this was an affirmative defense. And three, they didn't get the definition of consent. In all these other cases, the jury got a couple of those pieces. And Roberts, the only thing they didn't get was the bracketed material. But they were apprised of the fact that there was this defense of consent and they were apprised of the fact of what the definition was. And the same thing with Rollins. We would have to write an order or an opinion directing the trial court to take notice of this particular argument that you've made. How should we, what should we instruct? We agree with you. What should we instruct the trial court to do on remand when the trial court is confronted with a defense, a defendant, and his attorney and they don't want this instruction? What should the trial court say to them when he overrules their request and gives it anyway? Well, the judge should look at the act and look at this language that says it is necessary. And despite the fact that the defendant doesn't want the jury to hear this instruction and his lawyer doesn't want them to hear it, the trial judge should do it anyway. The judge has a duty, has a duty to... Does he have a duty to let the jury know that the defendant doesn't want this instruction? Well, I think, Your Honor, in this case it's really difficult to say that the defendant himself didn't want the instruction. I just want to know what we should tell the trial judge to do in this situation. What the record actually shows is that the defense counsel didn't even talk to Mr. Mims about this before he told the judge he didn't want the instruction. How do we know that? Because it's in the record. What does it say? It says, the judge says, have you talked to Mr. Mims about this? And he says, no I haven't, maybe I will. Maybe I will. But then later on the defendant comes up and the judge asks him, doesn't he? Right. He says, Mr. Defendant, do you agree with your lawyer that this instruction should not be given? And he says, yes. Well... But was that after the process? That's not a sufficient amount of time to let Mr. Mims actually understand what the implications are. Okay. So I'm the trial judge and I agree with you and I say, anticipating that this trial attorney is really making a terrible mistake on behalf of his client. So I say, Mr. Attorney, I'm going to give this instruction whether your client like it or not. And I give it. Do I also give it with an admonition to the jury that the defendant didn't want it given? That's a good question. I mean, I think the critical thing is... Well, I'm the trial judge now. Give me some advice on what I should say. Well, first and foremost, the jury has to be instructed properly. Okay. Looking at the IPI, this is what it says is necessary to do. And this will cure any error that may come up on appeal when the defendant says... If the defense complains on appeal... The trial judge committed reversible error by giving instruction I adamantly refused. Yes, because then the appellate court can look right at the IPI and say, well, this is what the relevant law is regarding consent instructions. And look, it says exactly that. This is what the jury got. I think I understand your position. We need to hear from the state. All right. Well, Your Honor, can I just have one minute to just sum up? Yes. Certainly. And you're going to have rebuttal time. And you're going to have rebuttal time, too. Okay, thanks. I just want to make clear that is unique about this case. This isn't a plain error case. This isn't just a simple case of did the jury have all the law. That's the most important component of it. But we also have the second ineffectiveness argument regarding this prior consistent statement that makes this a very unique case. And the court can point to that when justifying sending this case back for a new trial. And that's a good way to distinguish Rollins and Roberts. So even if you take that approach that they espoused by looking at all the factors, these are the two things that you can point to. The fact that in this case, the jury got none of the three. And in addition to that, there was also this prejudicial hearsay testimony that came in. Thank you, Judge. Judges? Thank you, Counsel. We'll give you an opportunity to respond once we've heard from the State. Thanks. May I please report? I'm Assistant State's Attorney Ashley Kuzot, and we have the people of the State of Illinois. Good morning. From the very beginning of this case, Defense Counsel clearly established his trial strategy. And the record provides direct evidence that Counsel's alleged errors were matters of that trial strategy that caused absolutely no prejudice to the defendant. Regarding the jury instruction issue, Defense Counsel made a deliberate and a tactical decision not to instruct the jury about the defense of consent. The reasons for this are twofold. First of all, the element of forced instruction allowed the jury to find the defendant not guilty based on his defense of consent. In the context of criminal sexual assault, the Illinois Supreme Court has specifically stated that if the people prove the defendant used force, then they necessarily prove that the victim did not consent. The Illinois Supreme Court stated this in the case of People v. Haywood, and also in the case of People v. Roberts, which was cited in the People's Brief. It's also important to note... It is? Yes, Your Honor, it is. Well, then I misspoke earlier, and I apologize. And the people also maintain that Roberts did overrule the Coleman decision that was a 1987 case. What page is that on? It's on page 17 of the People's Brief. So, if the jurors believe the defendant, that the victim agreed to engage in sexual intercourse in exchange for $50, then the jury would have found the defendant not guilty because the element of force would not have been met. So, even if the jury had been redundantly instructed about the law of consent, the results of this trial would not have differed, especially in light of the overwhelming evidence against the defendant in this case. Therefore, the defendant has failed to show that he was prejudiced by counsel's decision to withhold the consent instruction. Secondly, the language contained within the consent instruction was not favorable to the defendant in this particular case. But wouldn't you say that about every case? No. This is the law of Illinois, and the instruction can be chosen by either the people or by the defendant, if and when it fits their strategy. So, there may be a case where the victim is saying she fought back against the defendant, and the defendant may be saying it's clear consent. And in that case, defense counsel would happily request this instruction. So, this is the situation that defense counsel was stating. The committee notes below the defense consent instruction require that the definition of the word consent be given along with it. And the definition of consent states, the lack of verbal or physical resistance or submission by the victim resulting from the defendant's use or threat of force shall not constitute consent. But the IPI does indicate that consent, number one, is an affirmative defense, and that the consent instruction and the issues instruction should include the paragraph that says, and the state must also establish, that the victim did not consent. And that's what the IPI says to do. It's my understanding the committee notes below 11.58 actually cite the case of People v. Coleman, which was overruled by Roberts. Well, wait a minute. No. Roberts didn't overrule it. It can't. Roberts was just another 1st District case. They cite, they do a CF, but Roberts was just another division disagreeing with another division of the 1st District. So, I mean, it didn't overrule it, technically speaking. Oh, I apologize, Your Honor. In People v. Roberts, the court noted that the legislature did not intend for consent to be an affirmative defense, only a defense. In 1983, the legislature rewrote the aggregated criminal sexual assault statute, and the enacted version of that statute specifically deleted the word affirmative. Therefore, counsel can't be required to give this instruction in all cases. And this makes sense, because consent disproves force. Consent doesn't justify or otherwise excuse a rape. So the people maintain in this case that consent is a defense, not an affirmative defense. And this fits the back of the case here, because counsel relied on the fact that he repeatedly emphasized that the victim in this case sustained no injuries from the incident. The victim also admitted on the stand that she did not fight to stop the defendant from penetrating her in this case. So in doing so, counsel relied on the fact that the people may not be able to prove the element of force beyond a reasonable doubt. The definition of consent, however, undermined his strategy, as it made it easier for the people to prove force in this particular case. Now, counsel specifically told the trial court that this was the reason he did not want the instruction. And the trial court agreed with him, and, as you mentioned, the defendant actually agreed with him, on the record. So under the doctrine of invited error that the case, I believe, Justice Cahill, that you are looking for is People v. Monkey, cited by the defendant. Under the doctrine of invited error, a defendant may not request that his counsel proceed in one matter at trial and then contend on appeal that he acted in error. Well, the only problem with that is that you end up with a situation where the appellate defender is arguing against the attorney who represented his client below, and the state's attorney is defending the behavior of the defense attorney at trial. That's part of the problem with this whole issue of ineffective assistance of counsel. The roles are reversed, and one wonders sometimes just how aggressive, how aggressive the parties are at the appellate level when they're taking opposite roles. I've often wondered about that. You say invited error. Yes. Your Honor, and I believe the record clearly shows that counsel went off the record, and it's clear, and spoke with his client specifically about this decision not to give this consent instruction. And then the defendant told the trial court when asked, do you agree with your attorney's decision? He said yes. So, because this was a legitimate trial strategy here... Well, if it was a legitimate trial strategy, then they didn't invite any error, did they? It was a legitimate... Exactly, yes, that is correct, Your Honor. Okay, well, you're arguing either side is what you're saying. Exactly, exactly. Take your choice, Judge. If it is a legitimate trial strategy, then at most it's invited error. That's right, Your Honor. Okay, but I understand the problem the State has when you're confronted with a defendant who has been convicted of a particular crime and sentenced. And this is why one of the reasons this is an important case, because of the sentence imposed in this case. You end up defending the defense, at least in part. Correct. Okay. What about this other issue with respect to the police officer being allowed to testify? Well, the record shows that counsel's strategic decision to withhold the hearsay objection caused no prejudice to the defendant. Oh, come on now, you can't really believe that. The jury heard this police officer destroying the defendant's case. Well, it's important to note that this trial court specifically instructed the jury... Afterwards, after the jury had heard this police officer testify. Exactly. And without a peep out of the defense attorney. Well, first of all, we have a presumption in place that instructing the jury to disregard improper testimony cures potential prejudice. Do you really believe that? I do. We've got a host of cases that say, depending on the factual circumstances of the case, that it doesn't. Well, Your Honor... That the error is so prejudicial that no curative remark by the trial judge can save it. Your Honor, I believe that the jury looks to the judge for guidance and that they sometimes consider the judge sort of a 13th juror. So that this instruction telling them specifically... Disregard what you just heard. Disregard what you just heard. You cannot consider this because it is hearsay. That that has a significant... There is no elephant in the room. I'm sorry? There is no elephant in the room. Try to spend a minute not thinking about an elephant. Noted, Your Honor, but it's also important to note under the prejudice prong that at the very most, this hearsay was just cumulative. The proverbial bell, as counsel argued, was not wrong. It was not... A fact that was otherwise unknown to the jury was not stated in Officer Hayes' hearsay testimony. They heard all of this testimony from the victim. And moreover, it's important to note that defendant's right to confront the witnesses against him was not violated here because defense counsel was able to fully cross-examine the hearsay declarant in this case. So based on all of that, defendant has failed to show that he was prejudiced in this case. And although the court may consider whether defendant suffered prejudice without determining whether counsel's conduct was sufficient, it's also important to note here that counsel withheld his objection to the hearsay testimony because it supported the theory of his case. Which was what? Well, in his opening statement, it was clear from what he said that defense counsel intended to counter this mountain of evidence by boiling the case down to the credibility of just two people, the defendant and the victim. And during the sidebar, following Officer Hayes' hearsay testimony, he specifically told the trial court that, following my remarks and opening statement, what I want to make clear to these jurors is that no matter what the police officers say in this trial, it's only based on what this young woman said to them. And he again reiterated this theory in closing argument. So it's clear. His strategy is abundantly clear here. He wanted to take all of the state's evidence and make it appear to trace back to a single source, the victim. And if he could discredit that single source, then the jury would have to disregard all of the other evidence in this case. Now, was this a successful strategy in this case? No. But the Illinois Supreme Court has specifically stated that a mistake in trial strategy or an error in judgment does not render representation constitutionally deficient. It's only if counsel's strategy was so unsound that he entirely failed to conduct meaningful adversarial testing in the people's case. So we have to look at this case prospectively. And we have to put ourselves in counsel's shoes at the time of trial. And this was an incredibly difficult case. He was dealing with the victim's very compelling testimony. He was dealing with other crimes evidence that was admitted over his objection. He was dealing with DNA evidence. And he was dealing with a detective and an assistant state's attorney who could impeach his defendant's own testimony. So this was an incredibly tough case for him. And even though counsel's strategy wasn't perfect in this case, it certainly did not rise to the level of ineffective assistance of counsel under Strickland. So for these reasons stated in the people's brief, we ask that you affirm defendant's conviction and sentence. Thank you, counsel. A brief rebuttal. Thank you, Your Honors. It may have been a difficult case for the defense counsel, but it certainly isn't difficult to read the IPI and see what it says and follow through with that. Why don't you try to respond to the last suggestion here? Now, he's stuck with the DNA. And his strategy, his defense is going to be consent. Right? That's right. That's the crux of this ineffective assistance argument. In this case, there's medical testimony that she was examined, but there's testimony from that same... It was stipulated that there's no evidence of physical injury. Okay? But the doctor says that that doesn't mean there wasn't a sexual assault. But the testimony that's stipulated too says no evidence of physical injury. So he's got that going for him. He argues that. He argues that this is a consent. And it's basically he said, she said. That's what his defense is. So this language that he says to points out to the court that says it emphasizes that physical... What is it? That the victim doesn't have to resist physically or in any way. So that really, in his mind, and the judge's mind, was not helpful to his position. Because it would emphasize to the jury, well, you don't have to have any physical resistance. She doesn't have to resist. That's not the law in Illinois. So how do you counter the assistant's last argument that moving away from the definition and that instruction helps him and that wasn't unsound? Well, it was unsound. And, Your Honors, I apologize for not providing that Frampton case and I'd be happy to file a supplemental brief. What she's addressing and focusing on is the theory behind the defense attorney's strategy. The case you're talking about, isn't that the 54 Supreme Court case? No, it's the 1993 case where the defendant was talking about precisely that language that you speak of where the defense counsel said the jury should not have got that language. The appellate court said no. That's what the IPI says. That's an accurate statement of what the law is. So are you saying in that case the lawyer did what this lawyer did? No. In that case the language did go in and then on appeal the argument was that the jury should not have been instructed on that precise language about the physical resistance. But that's really not the same scenario. It's the same scenario in that there's no sound strategy. Of course there's a strategy. Here's exactly what he said. He told the trial judge what his rationale was. You have consent, but you have this little caboose on the instruction that the jury gets. Consent is obviated, negated, if there's evidence of force. So you have evidence of consent, evidence of force. What he didn't want the jury to hear was the second part, the caboose. And he was successful in that strategy. They didn't hear that. But not only did they not hear about this caboose, they didn't hear about the state's burden to prove lack of consent beyond a reasonable doubt. You want to trade one for the other. He as a lawyer said I would rather just argue consent without having to bring up this issue with the fact that with a gun in her head she didn't have to. That's force. And that obviates any argument about consent. It seems to me to be a rather shrewd strategy actually under the circumstances. I disagree. I know you do. As Justice McBride was saying, this was a he said, she said. Mr. Mims's version was this was a consensual, essentially a prostitution encounter. There was no other witnesses. No physical injuries to the victim. No one else corroborated this event aside from this inadmissible hearsay that came in through Officer Hayes. And what was the prejudice here is that in opening the defendant files this apartment with defensive consent. Talks about it in an opening. Talks about it in a closing. When it comes time for the jury instructions, the jury has no legal mechanism to find a lack of consent or to find consent because they weren't instructed on it. They didn't get the full picture of the state's burden to prove lack of consent. What is the site in that case that you're referring to? I do want to have that site. People versus Frampton, 248, 238. It's 1993. But that's just for the proposition that... 293? What was the page? It's 238. It's 1993 is the year. Oh, I'm sorry. 238, you'll have 3rd. No, 248. Okay, that's what I had. You'll have 3rd, then 238. Well, you think that under the prejudice prong you're able to show that the outcome would have been different with the compilation of evidence presented? Yes, for two reasons. Because even if we take this Rollins approach, which I think is the correct approach, it's not just a per se error. It's let's look at all the circumstances. Did the jury, with all the jury instructions that they got, were they fully and fairly apprised of what the law of consent is? No, they didn't get either of the three required things. And then the closeness of the evidence, it wasn't overwhelming. What the counsel said in oral arguments, defense counsel told the jury, here's what's going to happen. How do you get past prejudice when you've got these cases that keep saying that when the state proves force, they've proved non-consent? When they have proved beyond a reasonable doubt that it was forced, they've proved non-consent. So how do you get past the prejudice? They're obviously connected, Your Honor. I can't deny that those two are very connected. I don't know how you get past this. But the IPA says it's necessary to do it. It was important to tell the jury that there was this extra burden that the state had. But you have to show that the instruction given would have changed the outcome. And when all these cases are saying that when the state establishes force beyond a reasonable doubt, they have, in essence, established non-consensual sex. Right. And that's what makes this case unique, is that in all these other cases where they do find that it was a harmless error or it was a plain error, the jury did get a couple of pieces of this train or puzzle, however you want to say it. Here they got zero of the pieces. There's no train on the track. And then, in addition, we have this second ineffective assistance argument regarding this inadmissible hearsay from a police officer who verbatim essentially repeated what the complainant said on the stand. And the jury is going to be swayed by what a police officer says. And that's what makes this case unique, and that's why Mr. Mims deserves a new trial. Counselors, thank you both. I thought the oral argument was vigorous and well-handled on both sides. The case will be taken under advisement, and we'll take a short recess while we get set up and configured for the next case.